Of Counsel
FUKUNAGA MATAYOSHI CHING & KON-HERRERA, LLP

WESLEY H. H. CHING          2896
SHEREE KON-HERRERA          6927
JENNIFER C. CLARK           4497
841 Bishop Street, 1200 Davies Pacific Center
Honolulu, Hawaii  96813
Telephone:  (808) 533-4300
Facsimile:   (808) 531-7585
Email:   whc@fmhc-law.com
         skh@fmhc-law.com
         jcc@fmhc-law.com

Attorneys for Plaintiff
THE NORTH RIVER INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY, a New Jersey corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>GRAHAM BUILDERS, INC.,<br><br>    Defendants.<br>_____ | CASE NO.<br>(Declaratory Judgment)<br><br>COMPLAINT FOR DECLARATORY JUDGMENT; EXHIBIT "1" |

COMPLAINT FOR DECLARATORY JUDGMENT

Comes now Plaintiff THE NORTH RIVER INSURANCE COMPANY

("TNRIC"), by and through its attorneys, FUKUNAGA MATAYOSHI CHING &

KON-HERRERA, LLP, and alleges in its Complaint against Defendant GRAHAM BUILDERS, INC. ("GBI" or "Defendant") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff TNRIC is a New Jersey corporation with its principal place of business in Morristown, New Jersey.

2. Upon information and belief, Defendant GBI, was and is a Hawaii corporation with its principal place of business in the State of Hawaii.

3. There is complete diversity of citizenship between the parties and the amount in controversy herein exceeds $75,000.

4. The events giving rise to the claims asserted herein occurred in the City and County of Honolulu and the State of Hawaii and thus venue lies in this Court.

5. TNRIC brings this action pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 2201 asking this Court to determine, as a matter of law, that TNRIC has no duty under certain insurance policies to defend or indemnify GBI for claims asserted against it in an Underlying Third-Party Complaint filed in the Circuit Court of the First Circuit. State of Hawaii, in an action entitled *Madhu P, Lundquist, Chelsea R. Jackson, Altres Holdings, LLC, and Kerry A. Kopp v. Anna M. Louie, Stephen G. Smith, Rowena T. Paresa, Coldwell Banker Pacific Properties LLC, et al.*, Civil No. 20-1- 0001586 (the "Underlying Lawsuit"). The Third-Party Complaint in the

Underlying Lawsuit is entitled *Anna M. Louie and Stephan G. Smith v. Graham Builders, Inc., Doe Third-Party Defendants 1-10* (the "TPC" or "Underlying TPC").

6. There is an actual and continuing controversy between TNRIC and GBI as to whether TNRIC has any duty to defend and/or indemnify GBI from the claims asserted against GBI in the Underlying TPC.

## BACKGROUND

7. The background given herein is according to the Underlying TPC attached hereto as Exhibit "1" or the Underlying Complaint attached to the TPC as Exhibit "A".

8. On or about August 1, 2008, GBI entered into a contract with Underlying Lawsuit Defendants/Third-Party Plaintiffs, Anna Louie and Stephen Smith ("Louie/Smith"), to tear down their existing house and build a new house on the same lot located at 3147 Makini Street, Honolulu, Hawaii, 96815 ("the Property"). Work was completed by GBI on or around June 2010.

9. About a year afterward, Louie/Smith notified GBI that there was a "high spot" in the living room concrete slab. GBI allegedly represented to Louie/Smith that it would make all necessary repairs at its own expense.

10. GBI consulted with Structural Systems, Inc. ("SSI") and Shinsato Engineering ("Shinsato"). SSI consulted with JPB Engineering ("JPB"), which

undertook a geoanalytical investigation inside and around the home on or about October 2012. During that investigation, JBP observed numerous signs of distress, including shears in the drywall finishes around the stairs and in the kitchen, separation on the Diamond Head wall of the living room, and cracks in the porch and driveways, "resulting from heaving caused by 'expansive soils.'"[1]

11. "On or about October 2013, Shinsato performed an additional assessment and prepared a report regarding distress conditions including uneven floor with the ground floor slab apparently rising upward from the foyer area to the living room floor, a shear crack in the wall at the top of the stairs, cracks and separations in the kitchen walls, separation of the living room/bedroom 2 wall from the back perimeter wall of the house, warping of the window casing at the back wall of the living room, a misaligned door frame of the back lanai, caused by highly plastic clay soil and the migration of water beneath the house slab from the back yard area."[2]

12. In an attempt to solve the problems, Shinsato installed a "concrete curtain" surrounding the house to prevent moisture from entering the foundation.[3]

---

[1] See Exh. "1", TPC, pg. 6, ¶ 28.
[2] *Id.*
[3] See Exh. "A" to Exh. "1", Complaint, pg. 10, ¶ 55.

13. GBI completed the repair work in or about 2017 and represented to Louie/Smith that GBI had satisfactorily completed all repairs necessary to address and resolve the high spot in the living room concrete slab.

14. Louie/Smith sold the house on November 21, 2018 to Underlying Lawsuit Plaintiff Madhu P. Lundquist in the manner described in the Underlying Complaint for $1,607,200.00 subject to an "AS IS" addendum to the contract of sale.

15. Several months after purchasing the property, Underlying Plaintiffs "noticed problems suggesting movement, settling, or shifting of the house since the sale of Property closed." "These problems included creaking floors and misalignment of the sliding door at the entrance to the master bedroom, shifting of the master bedroom shower door, cracks in the grout along the edges of the master bathroom, creaking sounds from the ceiling of the master bedroom, misalignment of the master bedroom door preventing it from latching properly, misalignment of the patio sliding door causing it to stick, uneven spots in the lower-level floor, new cracks in the drywall throughout the house, [and] new cracks in the driveway."

16. The Underlying Plaintiffs asserted that "the undisclosed conditions, including heaving due to expansive soils continue to result in movement and damage to the Property" and that they "continue to experience significant damage to the Property, as evidenced by the creaking sounds in the floors and ceiling,

misalignment and shifting of doors, uneven spots in the lower-level floor, and new cracks in the drywall, the driveway, and the grout in the bathrooms."

## UNDERLYING LAWSUIT

17. On November 25, 2020, the Underlying Plaintiffs filed the Underlying Lawsuit against Underlying Defendants Louie/Smith and their realtors. The basis of the lawsuit included allegations of misrepresentation and failure to disclose in the Disclosure Statement by the Sellers. The Underlying Plaintiffs alleged that the Sellers misrepresented and/or failed to disclose the past or present defects, repairs, or replacements including with respect to the doors, driveways, walkway, exterior walls/trim, interior walls, baseboards, trim and windows/screens.

18. The Underlying Complaint alleges liability by Louie/Smith based upon breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentations and nondisclosure, violation of Chapter 508D of the Hawaii Revised Statutes, fraudulent inducement, promissory estoppel, unjust enrichment and civil conspiracy and seeks unspecified general, special, punitive, incidental and consequential damages, declaratory relief and rescission of the sale of the Property.

19. On October 19, 2021, Underlying Defendants Louie/Smith filed a Third-Party Complaint ("TPC") against GBI in the Underlying Lawsuit. The TPC alleges, *inter alia*, that GBI did not involve Louie/Smith in GBI's remedial work at

the property, including the investigations performed by SSI, Shinsato and/or JPB, nor did GBI provide copies of any soil reports to Louie/Smith that GBI had obtained or received.

20. The Underlying TPC alleges three counts against GBI. In "Count I – Negligence" GBI was alleged to be negligent and/or grossly negligent in, among other things, its failure to construct, inspect and/or repair the Property in a reasonably prudent manner so as to prevent the damage alleged by Underlying Plaintiffs. Count I alleges that if Underlying Plaintiffs continue to experience significant damage to the Property including "heaving due to expansive soils," that GBI caused the condition and/or failed to properly construct, inspect and/or repair the Property.

21. Count I further alleges that if Underlying Plaintiffs suffered any damages as alleged in the Underlying Complaint, such damages were caused by the negligence, improper acts or omissions, wrongdoing or breach of duty on the part of GBI and not by Louie/Smith.

22. The Underlying TPC alleges in "Count II – Breach Of Contract And Express/ Implied Warranty" that GBI breached the construction contract by failing to construct the Property free of defect. Count II alleges that GBI undertook investigation and repair work in 2012, 2013 and 2017 to address Louie/Smith's concerns regarding a high spot in the living room concrete slab and represented to

Louie/Smith that it had satisfactorily completed all repairs necessary to address and resolve the issue.

23. Count II also alleges that if Underlying Plaintiffs suffered any damages, such damages are the direct and proximate result of GBI's breach of its construction contract and/or breach of express/implied warranties.

24. The Underlying TPC alleges in "Count III – Negligent/Intentional Misrepresentation" that GBI misrepresented and/or failed to disclose material facts relating to its construction, investigation and repairs at the Property including the condition of the Property.

25. Count III also alleges that GBI misrepresented to Louie/Smith that GBI correctly and fully repaired any and all defects/issues related to the high spot in the living room concrete slab at the Property and any and all construction defects and damages related thereto that were discovered by GBI at the Property.

26. The Underlying TPC alleges that, as a direct and proximate result of GBI's negligence, breach of contract, breach of express/implied warranties, and negligent/intentional misrepresentations, that Louie/Smith are entitled to damages in an amount to be proven at trial, including but not limited to the cost of correcting defects and reimbursement of fees and costs incurred by Louie/Smith.

## THE POLICIES

27. At all times relevant hereto, GBI was a named insured under the following TNRIC Package Policies:

Package Policy No. 5038472106:   Policy Period: 09-01-2017 to 09-01-2018
Package Policy No. 5038555041:   Policy Period: 09-01-2018 to 09-01-2019
Package Policy No. 5038582968:   Policy Period: 09-01-2019 to 09-01-2020
Package Policy No. 5038617969:   Policy Period: 09-01-2020 to 09-01-2021
Package Policy No. 5038705899:   Policy Period: 09-01-2021 to 09-01-2022

The above policies are hereinafter referred to as the "subject Primary Policies."

28. At all times relevant hereto, GBI was the named insured under the following TNRIC Excess Policies:

Excess Policy No. 5821082397:   Policy Period: 09-01-2017 to 09-01-2018
Excess Policy No. 5821105662:   Policy Period: 09-01-2018 to 09-01-2019
Excess Policy No. 5821124994:   Policy Period: 09-01-2019 to 09-01-2020
Excess Policy No. 5821143363:   Policy Period: 09-01-2020 to 09-01-2021
Excess Policy No. 5821169508:   Policy Period: 09-01-2021 to 09-01-2022

These policies are hereinafter referred to as the "subject Excess Policies." The above Primary and Excess policies are hereinafter collectively referred to as the "subject Policies."

29. The subject Primary Policies' commercial general liability ("CGL") coverage part affords liability coverage for "bodily injury", "property damage" and "personal and advertising injury" with a General Aggregate Limit of $2,000,000, a Products/Completed Operations Aggregate Limit of $2,000,000, and an Each Occurrence under Coverage A or any one person or organization under Coverage

B Limit of $1,000,000 subject to a property damage deductible of $1,000 per claim.

30. The subject Excess Policies afford liability coverage with a General Aggregate Limit of $1,000,000 and an Each Occurrence Limit of $1,000,000.

31. The Primary Policies' CGL coverage part was written on ISO forms CG 0001 12 07 and CG 00 01 04 13, which include the following relevant provisions:

> SECTION I - COVERAGES
> COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>       (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>       (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>       (2) The "bodily injury" or "property damage" occurs during the policy period; and
>       (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>    c. "Bodily injury" or "property damage" which occurs during the policy period and

       was not, prior to the policy period, known to have occurred by an insured listed under Paragraph 1. of Section II – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

       (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

       (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

       (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*\*\*

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. \*\*\*

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract" and

        (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   \* \* \* \*

   j. **Damage To Property**

      "Property damage" to:
      \*\*\*

      (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

      (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

11

\*\*\*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.  Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**  Insuring Agreement

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply....

\*\*\*

**2.**  Exclusions

32.  The subject Primary Policies' CGL coverage part is modified by Endorsement FM 101.0.1839 04 00, **SUBSIDENCE AND EARTH MOVEMENT AND EARTH PRESSURE EXCLUSION**, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

SUBSIDENCE AND EARTH MOVEMENT AND EARTH PRESSURE EXCLUSION

12

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of Coverage A – Bodily Injury and Property Damage Liability and paragraph 2., Exclusions of Coverage B – Personal and Advertising Injury Liability (Section 1 – Coverages):

This insurance does not apply to any liability for "Bodily Injury", "Personal and Advertising Injury", or "Property Damage" directly or indirectly arising out of, caused by, resulting from, contributed to, or aggravated by "Subsidence and Earth Movement" or "Earth Pressure." Such loss or damage is excluded regardless of any other cause or event, including any product, work or operation provided or performed by or on behalf of the insured, that contributes concurrently or in any sequence to the loss or damage.

It is further agreed that Section I – Coverages Supplementary Payments – Coverages A and B do not apply to any claim or "suit" seeking damages excluded by this endorsement.

"Subsidence and Earth Movement" means: any movement of land, including, but not limited to, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking or expansion of foundations, walls, roofs, floors, or ceilings, or any other movements of land or earth.

"Earth Pressure" means: pressure exerted by land or earth, whether or not combined with water.

33. The CGL coverage part also includes the following relevant definitions:

SECTION V – DEFINITIONS
\*\*\*
8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.
   \* \* \* \*
13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions [modified by the Clarified Occurrence Definition below].
    \* \* \* \*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f. The use of another's advertising idea in your "advertisement"; or
    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
16. "Products-completed operations hazard":
    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
        (1) Products that are still in your physical possession; or
        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
            (a) When all of the work called for in your contract has been completed.
            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
    b. Does not include "bodily injury" or "property damage" arising out of:
        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
        (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
        (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.
17. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
    For the purposes of this insurance, electronic data is not tangible property.
       * * * *
21. "Your product":

    a. Means:
       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
         (a) You;
         (b) Others trading under your name; or
         (c) A person or organization whose business or assets you have acquired; and
       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
    b. Includes:
       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
       (2) The providing of or failure to provide warnings or instructions.
    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":
    a. Means:
       (1) Work or operations performed by you or on your behalf; and
       (2) Materials, parts or equipment furnished in connection with such work or operations.
    b. Includes:
       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
       (2) The providing of or failure to provide warnings or instructions.

\* \* \* \*

The definition of occurrence is modified as per FM 101.0.2570 09 10 which provides:

CLARIFIED OCCURRENCE DEFINITION

This endorsement clarifies coverage under the Commercial General Liability Coverage Form. The definition of "Occurrence" set forth in Section V- Definitions is clarified as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Accidental "property damage" or "bodily injury" caused by "your work" will be considered to be caused by an "occurrence", but coverage for such damage or injury remains subject to application of all policy terms, conditions, exclusions and limits.

34. The subject Excess Policies were written on ISO Form FM 101.0.302 (9/96) and FM 101.0.302 08 18 which include the following relevant provisions:

FM 101.0.302 (9/96), for policy years 2017-2018 and 2018-2019, provides in relevant part:

> WE will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE, and (2) only after all UNDERLYING INSURANCE has been exhausted by the payments of the limits of such insurance for losses arising out of occurrences insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE.  If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

FM 101.0.302 08 18, for policy years 2019-2020, 2020-2021 and 2021-2022, provides:

> EXCESS LIABILITY COVERAGE FORM
> SECTION I. – COVERAGE
>    1. Insuring Agreement
>       a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which this insurance applies.
>       b. If any applicable "underlying insurance" does not pay for "ultimate net loss" for any reason other than the exhaustion of its applicable limit of insurance by payment of claims or "suits", then this Policy will not cover such "ultimate net loss."
> * * * *
> SECTION IV – DEFINITIONS
> As used in this Policy:
> * * * *
> 5. "Retained Limit" means the sum of all applicable "underlying insurance" shown in the Schedule of Underlying Insurance and any other insurance or self-insurance applicable to the claim or "suit", except insurance specifically written to apply in excess of this Policy.
> * * * *

35.    GBI tendered the defense of the Underlying TPC filed October 19, 2021, to TNRIC, which is providing a shared defense under full reservation of rights with a previous insurer of GBI.

16

## STATEMENT OF CLAIM

36. TNRIC re-alleges and incorporates herein by reference the allegations in paragraphs 1-35 of this Complaint.

37. TNRIC alleges that the Underlying TPC's claims against GBI are excluded by the Subsidence and Earth Movement Endorsement, FM 101.0.1839 04 00, and do not trigger a duty to defend or indemnify GBI. *See North River Ins. Co. v. H.K. Construction*, 462 F.Supp.3d 1080 (D.Haw. 2020) (identical earth movement exclusion precluded coverage for property damage "regardless of any other cause or event, including any product, work or operation provided or performed by or on behalf of the insured" and applied to earth movement caused by natural phenomena, insured's operations, or any combination thereof), *aff'd*, 853 Fed. Appx. 191 (9th Cir. 2021).

38. The Primary Policies, as modified by Endorsement FM 101.0.1839 04 00, expressly excludes "property damage" directly or indirectly arising out of, caused by, resulting from, contributed to, or aggravated by "Subsidence and Earth Movement" or "Earth Pressure."

39. Such loss or damage is excluded regardless of any other cause or event, including any product, work or operation provided or performed by or on behalf of the insured, that contributes concurrently or in any sequence to the loss or damage.

40. The Subsidence and Earth Movement Endorsement defines "Subsidence and Earth Movement" as *any* movement of land, including, but not limited to subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow… or any other movements of land or earth.

41. In the alternative, TNRIC alleges that the Underlying TPC's claims, including negligent or grossly negligent "failure to construct, inspect and/or repair" the Louie/Smith property "in a reasonably prudent manner as to prevent the damage alleged by the [Underlying] Plaintiffs…" (Count I), breach of contract and express/implied warranty (Count II), and negligent/intentional misrepresentation (Count III) do not allege "property damage" or "bodily injury" that meet the definition of "occurrence" under the Clarified Occurrence Definition or the definition of an offense for personal and advertising injury in the subject Policies and therefore do not trigger a duty to defend or indemnify GBI.

42. In the alternative, TNRIC alleges that the Underlying TPC's claims are excluded by the provisions of the subject Primary Policies, including but not limited to, the "expected or intended injury" exclusion, the "contractual liability" exclusion, the "damage to property" exclusion, the "damage to your work" exclusion, the "damage to your product" exclusion, and/or the "damage to impaired property or property not physically injured" exclusion and therefore do not trigger a duty to defend or indemnify GBI.

43. In the alternative, TNRIC alleges that the property damage, the cause of the property damage and the ongoing conditions alleged in the Underlying Complaint and the TPC by GBI were known to GBI prior to the effective date of the subject Policies and therefore are deemed to have been known prior to the policy period. As such, the claims of ongoing property damage are not covered claims and do not trigger a duty to defend or indemnify GBI.

44. The Excess Policies incorporate the terms, conditions and exclusions of the Primary Policies.

Wherefore, Plaintiff TNRIC prays for relief as follows:

A. For a binding judicial declaration by this Court that TNRIC has no duty to defend and/or indemnify GBI under the subject Policies for the claims asserted against it in the Underlying TPC based on the exclusions contained in the Subsidence and Earth Movement Endorsement, FM 101.0.1839 04 00.

B. Alternatively, for a binding judicial declaration by this Court that TNRIC has no duty to defend and/or indemnify GBI under the subject Policies for the claims asserted against it in the Underlying TPC based on the lack of an asserted "occurrence" of "bodily injury" or "property damage" or asserted offense for "personal and advertising injury."

C. Alternatively, for a binding judicial declaration by this Court that TNRIC has no duty to defend and/or indemnify GBI pursuant to other specific exclusions in the subject Policies for the claims asserted in the TPC against GBI.

D. Alternatively, for a binding judicial declaration by this Court that TNRIC has no duty to defend and/or indemnify GBI because GBI is deemed to have known of the "property damage" prior to the policy period.

E. For reimbursement of all costs, including attorneys' fees incurred by TNRIC for the defense of GBI in the Underlying Lawsuit;

D. For TNRIC's attorneys' fees and costs in this declaratory relief action; and,

E. That TNRIC be awarded such other and further relief as may be necessary to resolve the controversy existing between it and the Defendants named herein as the Court deems just and equitable under the circumstances.

DATED: Honolulu, Hawaii, March 10, 2022.

    /s/ Wesley H. H. Ching
WESLEY H. H. CHING
SHEREE KON-HERRERA
JENNIFER C. CLARK
Attorneys for Plaintiff
THE NORTH RIVER INSURANCE COMPANY